

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-12-2004

# Mowla v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1069

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Mowla v. Atty Gen USA" (2004). *2004 Decisions.* Paper 846.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/846

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1069

NAEEMGOLAM MOWLA; KISWARA PARVEEN MOWLA;
TAHASHANJIM MOWLA,

Petitioners

v.

John Ashcroft, ATTORNEY GENERAL OF UNITED STATES OF AMERICA

Respondent

On Petition for Review of a Final Order of the
Board of Immigration Appeals
(Nos. A72-784-760; A73-657-573; A73-664-914)

Submitted Under Third Circuit LAR 34.1(a)
March 23, 2004

Before: ROTH, AMBRO, and CHERTOFF, Circuit Judges

(Opinion filed:  April 12, 2004)

OPINION

AMBRO, Circuit Judge

Naeemgolam Mowla ("Mowla"), his spouse, and their son seek review of

decisions of the Board of Immigration Appeals ("Board") summarily affirming the denial

by the Immigration Judge ("IJ") of their applications for asylum and witholding of removal. Because we conclude that the IJ's decision was supported by substantial evidence, we deny their petition for review.

## I. Factual and Procedural History

The Mowlas are natives and citizens of Bangladesh. Mowla has submitted an application for asylum on behalf of himself and his family, alleging that as a member of the Jatiya Party he was the victim of political violence and reasonably fears persecution if he is returned to Bangladesh. He claims that he was targeted by the police and by members of a rival political party, the Bangladesh Nationalist Party ("BNP").

Mowla testified that he joined the Jatiya Party in the mid-1980s. He served first as a publicity secretary and later as the secretary of the Shanghadi youth organization. His duties included organizing party meetings and creating political posters.

Mowla's request for asylum is premised on four incidents, which occurred between 1991 and 1993.[1] First, he asserts that on September 15, 1991, he was attacked by BNP supporters at a rally for the release from prison of the Jatiya Party President, Hussain Mohammed Ershad. He recounts that although the BNP supporters were the aggressors, only Jatiya Party members—including Mowla—were arrested. The police

---

[1] In his initial application for asylum, Mowla listed only two incidents of alleged persecution. He subsequently obtained new counsel and submitted a supplemental statement of facts, claiming that his first attorney did not permit him to review his application before it was filed.

allegedly held him in jail for several days, beat him, and released him on the condition that he withdraw from the Jatiya Party.

Second, Mowla claims that members of the BNP bombed the annual meeting of the Jatiya Party in Feburary 1992. The BNP members allegedly distributed handbills instructing Jatiya members to disband.

Third, in October 1992, several individuals who Mowla claims were affiliated with the BNP purportedly attacked him in his pharmacy. They proceeded to destroy the pharmacy and beat Mowla with sticks and swords, breaking his hand. Although the assailants accused him of conducting "illegal business and depriving [the] government from the tax," Mowla maintains that the attack was politically motivated.

Finally, Mowla asserts that, in April 1993, BNP members attacked him and four of his friends in a restaurant. Mowla's finger was cut in the attack. Although he reported the incident to the police, the BNP members allegedly filed charges against him, and the police subsequently sought to arrest him for instigating the altercation.

Mowla testified that he feared he would continue to suffer harassment and violence if he remained in Bangladesh. He also sought to avoid arrest in connection with the April 1993 attack. He therefore left Bangladesh with his spouse and son on November 23, 1993.

The Mowlas entered the United States as visitors for pleasure authorized to stay until May 22, 1994. In September 1997 they were served with notice to appear before an

3

IJ for remaining in the United States without authorization. The Mowlas, represented by counsel, appeared before an IJ on four occasions. In February 1998, they conceded removability but applied for relief in the form of asylum or withholding of removal. In the alternative, they sought voluntary departure. Mowla's wife and son are derivative applicants based on the incidents of persecution allegedly endured by Mowla.

The IJ deemed Mowla's testimony credible. He explained: "The respondent's testimony has been consistent with the asylum application that he filed and the Court sees no basis [for concluding] that the respondent lacks credibility for any reason." He nonetheless denied the Mowlas' applications for asylum and withholding of removal in September 1998. The Mowlas timely appealed to the Board, and the Board affirmed the IJ's decision. Pursuant to 8 C.F.R. § 3.1(e)(4) (now found at 8 C.F.R. § 1003.1(e)(4)), the Board did not issue a separate decision. The Mowlas timely filed this petition for review. INA § 242(b)(1), 8 U.S.C. § 1252(b)(1).[2]

## II. Discussion

---

[2]The Board had jurisdiction to review the IJ's decision pursuant to 8 C.F.R. §§ 3.1(b), 3.38, and 240.15. On March 1, 2003, the Department of Justice reorganized Title 8 of the Code of Federal Regulations to reflect the creation of the Department of Homeland Security and its assumption of the functions previously exercised by the Immigration and Naturalization Service. 68 Fed. Reg. 10349, 2003 WL 724287 (March 5, 2003). Under the Homeland Security Act ("HSA"), the functions of the Executive Office for Immigration Review, including the immigration courts and the Board, remain within the Department of Justice under the direction of the Attorney General. HSA, 116 Stat. at 2273. Regulations concerning the Board's jurisdiction, previously designated at 8 C.F.R. § 3.1(b)(3), are now designated at 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under section 242(a)(1) of the INA, 8 U.S.C. § 1252(a)(1).

4

The Immigration and Nationality Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act, permits us to consider "only . . . the administrative record on which the order of removal is based" in evaluating an applicant's petition for review of a final order of removal; "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." INA §§ 242(b)(4)(A)-(B), 8 U.S.C. §§ 1252(b)(4)(A)-(B). In light of this deferential standard, we deny the Mowlas' petition for review.

## A.     Overview of the statutory framework and standard of review

Section 208(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b), confers on the Attorney General discretion to grant asylum to an alien who is a "refugee." An individual qualifies as a refugee if he or she is "unable or unwilling" to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. 1101(a)(42)(A).

An applicant bears the burden of proving eligibility for asylum. 8 C.F.R. § 208.13(a); *Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001). In order to demonstrate a well-founded fear of persecution, an applicant must satisfy three requirements: (1) he or she has a fear of persecution in his or her native country, (2) there is a reasonable possibility that he or she will be persecuted upon return to that country, and (3) the applicant is unwilling to return to that country as a result of his or her fear. 8

5

C.F.R. 208.13(b)(2)(i).[3]  A finding that an applicant has suffered persecution in the past

results in a presumption that he or she has a well-founded fear of future persecution.  8

C.F.R. 208.13(b)(1).  The Government then bears the burden of demonstrating either (1) a

fundamental change in circumstances such that the applicant no longer has a well-

founded fear of persecution, or (2) that the applicant could avoid future persecution by

"relocating" within his or her country.  8 C.F.R. 208.13(b)(1)(ii).

Whether an applicant has demonstrated past persecution or a well-founded fear of

future persecution is a factual determination reviewed for substantial evidence.  *Abdille*,

242 F.3d at 483.  We will uphold the IJ's finding on these issues if it is "supported by

reasonable, substantial, and probative evidence on the record considered as a whole."  *INS*

*v. Elias-Zacarias*, 502 U.S. 478, 480 (1992).  We will reverse only if "the evidence not

only supports [a contrary] conclusion, but compels it."  *Id.* at 480 n.1.  Adverse credibility

determinations are also reviewed for substantial evidence, *Balasubramanrim v. INS*, 143

F.3d 157, 161 (3d Cir. 1998), and we will uphold those findings unless "any reasonable

adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

In this case, because the Board affirmed the IJ's decision without issuing a

---

[3]The eligibility threshold for withholding of removal is even higher: the Attorney General must determine that repatriation will more likely than not jeopardize the alien's life or freedom on account of one of the protected grounds.  INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).  The applicant must therefore demonstrate a "clear probability" of persecution.  *Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir. 1998).  Given this higher standard, an applicant who does not qualify for asylum also will not qualify for withholding of removal.

separate opinion, we consider the IJ's decision as the final agency determination. *See* 8 C.F.R. § 1003.1(e)(4)(B)(ii); *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002).

## B. The IJ's decision

We conclude that the IJ's decision, which was affirmed by the Board, was supported by substantial evidence. The IJ found that the February 1992, October 1992, and April 1993 incidents did not amount to persecution. Mowla made a number of concessions upon cross-examination that undermined his position with respect to these attacks. For example, he admitted that he did not see the individuals who allegedly bombed the Jatiya Party meeting in February 1992. Although he later claimed that another member of the Jatiya Party identified the individuals as BNP members, the IJ need not thereby have concluded that the incident qualified as persecution. Similarly, Mowla testified that of the "seven or eight" people who attacked him in his pharmacy, he recognized only one (and subsequently learned the name of another). Aside from that individual's ostensive membership in the BNP, Mowla offered no evidence that the attack was politically motivated. On the contrary, the assailants claimed to be targeting Mowla for conducting illegal business and tax fraud. Finally, Mowla merely "guess[ed]" that his attackers in April 1993 were members of the BNP.

On the whole, Mowla failed to buttress his testimony with documentation, despite

7

having received seven months to obtain the information,[4] and he did not provide a reasonable explanation for the absence of corroborating documents. The IJ noted with disfavor that the letter from the Jatiya Party on Mowla's behalf, one of the few supporting documents Mowla obtained, merely acknowledged his membership—it did not mention the four alleged clashes with the BNP. He deemed it "peculiar that the respondent, who seems to have claimed to have been perhaps some type of officer of the chapter, with only 101 members, could not even get a letter that confirmed anything more than the general involvement he had with the party. . . . [A] clear lack of evidence harms this case because it was respondent's obligation to prove anything that he could to corroborate his claim."

Viewing Mowla's testimony and the record as a whole, the IJ concluded that Mowla had failed to establish that these three incidents qualified as persecution. He explained: "Although the court does find that respondent is credible, the Court first finds that there is no evidence of past persecution. Although the respondent is a person who was at an annual meeting in 1992, and whose store was also looted that same year in 1992, the Court has no sufficient evidence to convince it of who it was that perpetrated

_____

[4]Mowla's counsel sought a continuance based on his ongoing attempts to secure supplemental medical records, subpoena court records from Bangladesh, and obtain affidavits from various individuals. The IJ denied the motion for a continuance on four grounds: (1) Mowla's descriptions of the supplemental material were vague and unspecific, (2) the seven-month period during which he should have collected the materials was already longer than usual, (3) the existing package of material contained sufficient information, and (4) the motion was not timely presented.

the offenses or whether, in fact, they were perpetrated for any reason protected by the Act." While the IJ might have determined that these incidents were in fact motivated by Mowla's affiliation with the Jatiya party and therefore constituted persecution on an enumerated ground, the evidence did not compel that conclusion.[5]

With respect to Mowla's September 1991 arrest, the IJ noted conversely that "[t]here certainly is a claim to past persecution." He nonetheless declined to grant Mowla asylum because he found "a clear change in circumstances because respondent remained in this country for another two years after that time before ever leaving." *Id*. Later in the opinion, he explained that his finding of changed country conditions was based on a State Department report noting that "at the time respondent left Bangladesh . . . the Jatiya Party [was] enjoying not only an ability to campaign for elected positions, but . . . also already enjoyed some success at becoming a part of the ruling organization for the country." He went on to clarify that "even if the respondent were persecuted in the past, the Court finds the changed country conditions[,] as outlined in the Department of State materials, defeat the reasonableness of the claim." In other words, while Mowla may have suffered persecution in the course of protesting the imprisonment of the Jatiya party leader, the subsequent release of Ershad and attainment by the Jatiya party of substantial governmental representation constituted changed country conditions. We

---

[5]Even if these were incidents of persecution, the IJ could properly have denied Mowla's application for asylum on the basis of changed country conditions, as discussed below.

find this logic compelling.[6]

The same reasoning underlies the IJ's finding that Mowla failed to establish a well-founded fear of future persecution. The IJ cited a State Department report stating that the Jatiya Party is now part of the governing coalition in Bangladesh. In fact, he noted, "President Ershad, who never legitimately enjoyed the position of president in the first place, is now free and actually even is a member of parliament." Mowla was unable to explain why, in light of political changes in Bangladesh, he would face persecution if he returned. He simply made unsubstantiated assertions that he would be subject to continued violence.

Finally, we note that the Board's summary affirmance of the IJ's decision in this case was constitutionally permissible and appropriate. "Certainly, the BIA could have articulated its reasons for affirming the IJ's order, but just because it had the power to do so[] does not mean the Constitution required it to exercise that power." *Dia v. Ashcroft*, 353 F.3d 228, 241 (3d Cir. 2003).

---

[6]The record reveals a slight inconsistency on this matter. The IJ's conclusion that circumstances changed because the Jatiya Party attained a leadership position in the government after the September 1991 arrest finds ample support in the record, including the 1998 State Department profile of Bangladesh. It is inconsistent, however, with an exchange between the IJ and Mowla at the hearing suggesting that the Jatiya Party was in rule at the time of the September 1991 protest. As the protest was convened specifically to obtain Ershad's release from prison, we assume that Mowla's testimony to the contrary reflects a misunderstanding.

### III. Conclusion

The IJ's denial of the Mowlas' applications for asylum and withholding of removal, affirmed by the Board, was supported by substantial evidence. Because the Mowlas have failed to establish their eligibility for asylum, they have also failed to meet the higher standard of eligibility for withholding of removal. *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003). We therefore deny their petition for review.